## ELĪAS N. GARDNER *vs.* HUGH JENKINS.

A bill for an injunction to restrain execution of a judgment did not allege *fraud* on the part of the plaintiff in the judgment, but merely that the deputy sheriff served the summons on the defendant *out of his bailiwick,* and, being informed of defendant's *residence* out of his bailiwick, failed to make the return of *non est* as he had promised to do. The bill also admits the defendant's indebtedness for *a part* of the amount for which the judgment was recovered, but does not state how much, *nor offer to pay it.* HELD:

That these allegations are not sufficient to authorise the granting of an injunction.

APPEAL from the Circuit Court for Baltimore City.

This appeal is from an order granting an injunction to restrain execution of a judgment, upon a bill filed on the 19th of February 1859, by the appellee, against the appellant.

The bill alleges, that the defendant, Gardner, claiming a certain amount of money to be due him from the complainant, brought suit on his supposed claim, in the Superior Court of Baltimore city, and that the writ in the case was directed, as usual, to the sheriff of the city, and placed in the hands of a deputy, who proceeded outside of his bailiwick and went into Baltimore county and there attempted to serve it; that the deputy there saw the complainant and told him he had such a writ, and notified him to attend the Superior Court, and that complainant at once informed the deputy, that he was a resident of the county, and that he was then in the county, and had no power to serve the process there, and that the proceeding was improper and illegal, to which the deputy replied, that he would so report, and that complainant need trouble himself no further on the subject; that relying upon these facts and statements, complainant did not trouble himself further on the subject, but supposed the writ would be returned *"non est"* or *"not found in the bailiwick,"* as it should have been, but he avers that instead of such return, the sheriff of the city, in fraud of complainant's rights, returned him "summoned."

The bill further charges, that the defendant, with whom the complainant has had dealings for several years, well knew

that he resided in Baltimore county, and was not amenable to the process of the Superior Court; that on such false and fraudulent return a judgment by default was obtained against him (as appears by a short copy of the docket entries filed with the bill and made part thereof) on the 14th of December 1858, to complainant's surprise and in violation of his manifest rights; that by these proceedings he was prevented from making his defences to the claim of which he only owes a part, whilst the judgment is for the whole amount claimed; that he was subjected to a jurisdiction to which he was not amenable, and a judgment was obtained against him by surprise, and under Acts of Assembly not applicable to the county in which he resides; that on this judgment the defendant caused a *fi. fa.* to be issued, on the 28th of January 1859, to the sheriff of Baltimore city, which was returned *nulla bona*, and thereupon he caused a *fi. fa.* to be issued to Baltimore county, which has been levied on complainant's stock of goods in his store in said county, and the sheriff of the county is about to remove and sell the same, and thereby destroy his business and cause the complainant irreparable injury.

The bill then prays for an injunction to restrain further proceedings upon this execution, and that this judgment may be set aside, and perpetually enjoined, and for general relief.

The docket entries of the judgment filed with the bill show, among other things, that judgment was rendered "by default for want of appearance, for $706 59 damages assessed by the court," and that after it was entered a motion was made to strike out the judgment and enter a *non pros.* and an *affidavit* in support thereof filed, which motion was *overruled* by the court.

On this bill the court (KREBS, J.) ordered the injunction to issue as prayed, and from this order the defendant, having first filed his answer, appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

Gardner *vs.* Jenkins.

*B. V. Danels* for the appellant.

It was the duty of the appellee, at the return of the writ, to avail himself of any defence he had, and having failed to do so, it is now too late. The Acts of 1796, ch. 43, secs. 14, 15, and 1801, ch. 74, secs. 11, 12, declare, that no defendant shall be arrested out of the county in which he is an inhabitant, and if he be, the plaintiff shall suffer a non-suit, but he must avail himself of his non-residence at the proper time, which is the return of the writ. A plea of non-residence is a plea in abatement, and if not availed of at the proper time, the defendant submits to the jurisdiction of the court. This is the case with this appellee. He was too late after the final judgment had been rendered and entered, to object to the court to whose jurisdiction he had, by his own act, submitted himself. In the case of *Hoffman, et al., vs. Prout,* 4 *H. & McH.,* 165, the plaintiffs were non-suited because the defendant, on the return day of the writ, produced an affidavit of his non-residence. The Superior Court was therefore right in rendering the judgment in conformity with the provisions of the Act of 1858, ch. 323, because Jenkins, having been duly summoned, failed to produce any evidence of his non-residence.

But again, it is a settled principle of equity, that he who seeks equity must do equity. Now, in the bill the appellee admits, that he does owe the appellant a part of the money for which the judgment was recovered, but does not say how much, nor does he tender or offer to tender the amount which he admits. He had, therefore, no right to ask for this injunction, and has now no right to have it continued. For these reasons it is submitted, the order granting the injunction should be reversed.

*Orville Horwitz* for the appellee.

The question in the case is, whether, upon the allegations of the bill, the court below was warranted in issuing the injunction? And for the appellee it is insisted:

1st. That the service of the writ by the sheriff or his deputy, outside of his bailiwick, is *void,* and the sheriff a trespasser, and that the judgment obtained on such service is equally

void. *Watson on Sheriff*, 60, 89, in 7 *Law Lib.*, 44, 64. 3 *Barn. & Ald.*, 408, *Hammond vs. Taylor.* 3 *Barn. & Cress.*, 158, *Storer vs. Rayson.*

2nd. That the promise of the sheriff's deputy to return the writ *"non est,"* and the subsequent return, "summoned," was a surprise and a fraud in fact on the appellee, against which a court of equity will relieve.

3rd. That the knowledge of the residence of the appellee by the appellant, the issue of process out of a court to whose jurisdiction he was not subject, and governed by special Acts of Assembly providing more summary remedies, and the subsequent conduct of the sheriff's officer in going out of the limits of the city to serve the writ, and of the appellee in obtaining thereupon by default a judgment for a larger amount than the appellee swears was owing, present a case amounting to a combination to defraud the appellee of his just rights, and full of such equities in his favor as a court of chancery will protect.

LE GRAND, C. J., delivered the opinion of this court.

We think the injunction improperly issued in this case, and that the order should be reversed. The bill does not allege any *fraud* on the part of the appellant, but merely against the deputy of the sheriff of Baltimore city, and this fraud is averred to consist in the fact, that the summons was served on the appellee without the limits of the *city* and within those of the *county* of Baltimore, and in the failure of the officer to report the appellee as *"non est,"* he being informed of the residence of the appellee in the county, and promising so to report the fact.

The bill admits that the complainant is indebted to the defendant, but it does not state the amount, *nor offer to pay it.* The case of *Fowler vs. Lee,* 10 *Gill & Johnson,* 363, shows, to use its language, that "Courts of Chancery do not lightly interfere with judgments at law. It is only for the prevention of fraud, or to relieve from subtantial injury or gross injustice, that its high and extraordinary power of interference by injunction is ever resorted to. It is never merely for the correc-

tion of informalities or irregularities in legal or judicial proceedings. He who seeks to avail himself of such defects, must prosecute his remedies at law; from a court of equity he can receive no countenance." It may be said of the present complainant as was said of the one in the case referred; "to obtain relief by injunction against this judgment he should, by his bill, have offered to do equity, by paying into court the debt which, by his own statement, he had shown himself in honor and in conscience under an obligation to pay." Besides these objections, the party had the right to proceed under the Act of 1787, chapter 9, and he availed himself of it. The judgment of the court being against him he is concluded thereby.

*Order reversed with costs.*

(Decided July 1st, 1859.)